## MATTER OF TIWARI

In Deportation Proceedings

A-36477665

*Decided by Board March 10, 1989*

(1) Although the Immigration and Naturalization Service's burden is materially lessened when it submits evidence that an alien has been convicted of bringing other aliens into the United States in violation of section 274(a) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a) (1988), the Service must still establish by clear, unequivocal, and convincing evidence that such an alien acted "for gain" in order to sustain a charge of deportability under section 241(a)(13) of the Act, 8 U.S.C. § 1251(a)(13) (1988).

(2) An inference may not be drawn to prove the "for gain" requirement in section 241(a)(13) of the Act and therefore, in the absence of clear evidence that the alien received remuneration in excess of his expenses or that he anticipated "gain" in exchange for his role in an alien-smuggling conspiracy, deportability is not established.

(3) The offense underlying a conviction under section 274(a) of the Act does not involve the element of fraud or evil intent and therefore the conviction does not render an alien deportable under section 241(a)(4) of the Act as an alien "convicted of a crime involving moral turpitude."

CHARGE:

Order: Act of 1952—Sec. 241(a)(13) [8 U.S.C. § 1251(a)(13)]—Smuggling for gain

Lodged: Act of 1952—Sec. 241(a)(4) [8 U.S.C. § 1251(a)(4)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Cynthia H. Cwik
Mary A. McCarthy, Esquire
Jerome N. Frank Legal Services
  Organization
Yale Law School
New Haven, Connecticut 06520

ON BEHALF OF SERVICE:
Loida Nicolas-Lewis
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The Immigration and Naturalization Service has appealed the decision, dated December 6, 1985, in which the immigration judge granted the respondent's motion to terminate the deportation pro-

ceedings that had been initiated against him. The appeal will be dismissed.

The respondent is a 36-year-old native and citizen of Guyana. He was admitted to the United States for lawful permanent residence on March 30, 1981. On June 17, 1983, the respondent was convicted, in the United States District Court for the Northern District of New York, of conspiracy under 18 U.S.C. § 371 (1988), of bringing aliens into the United States in violation of section 274(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1) (1988), and of transporting aliens within the United States in violation of section 274(a)(2) of the Act. The respondent was sentenced to 5 years' imprisonment for his conviction.

On July 8, 1983, the Service issued an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) against the respondent, charging him with deportability under section 241(a)(13) of the Act, 8 U.S.C. § 1251(a)(13) (1988), and alleging that the respondent had assisted aliens to enter the United States illegally and "for gain." On May 22, 1985, the Service lodged an additional charge of deportability against the respondent, contending that his aforementioned conviction constituted a crime involving moral turpitude and that he was consequently deportable under section 241(a)(4) of the Act.

The Service submitted into evidence the record of the respondent's conviction, portions of the transcript from his criminal proceedings, a sworn statement from one of the respondent's co-conspirators, and a sworn statement from the respondent that was taken on the same day that he was arrested for bringing aliens into, and transporting them within, the United States. The case was then submitted on briefs, and the immigration judge concluded that the Service had not met its burden of showing that the respondent had assisted aliens "for gain." The immigration judge also concluded that the respondent was not deportable under section 241(a)(4) as an alien who had been convicted of a crime involving moral turpitude. The immigration judge accordingly terminated the respondent's deportation proceedings. This appeal followed.

## SMUGGLING ALIENS "FOR GAIN"

The Service advances two arguments on appeal, the first of which is that the respondent is deportable under section 241(a)(13) of the Act because he assisted aliens in entering the country unlawfully, and because he did so "for gain." Section 241(a)(13) of the Act provides that an alien shall be deported if that alien, "at any time within five years after any entry, shall have, knowingly and

for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter the United States in violation of law."

The respondent here was convicted, within 5 years of his entry, of conspiracy to violate sections 274(a)(1) and (2) of the Act. At the time of the respondent's conviction,[1] those sections provided as follows:

Any person, including the owner, operator, pilot, master, commanding officer, agent or consignee of any means of transportation who—

(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

. . . .

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs . . . .

Proof that an alien has been convicted under section 274(a) of the Act materially lessens the Government's burden with respect to a section 241(a)(13) charge of deportability. See *Jew Ten v. INS*, 307 F.2d 832 (9th Cir. 1962), *cert. denied*, 371 U.S. 968 (1963). However, a conviction under section 274(a) is not prima facie evidence of an alien's deportability under section 241(a)(13) of the Act, since the deportation ground requires an additional showing that the alien acted "for gain" in assisting aliens to enter the United States illegally. See *Gallegos v. Hoy*, 262 F.2d 665 (9th Cir. 1958), *cert. denied*, 360 U.S. 935 (1959).

In deportation proceedings the Service generally bears the burden of proving an alien's deportability by clear, unequivocal, and convincing evidence. *Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1988). The Service must show by this same standard of evidence that an alien acted "for gain" in order to sustain a section 241(a)(13) charge. See *Soto-Hernandez v. INS*, 726 F.2d 1070, 1072 (5th Cir. 1984); *Pryce v. INS*, 568 F.2d 278, 283 (2d Cir. 1978); *Ribeiro v. INS*, 531 F.2d 179, 180 (3d Cir. 1976). There have been

---

[1] The Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, 3381-83, amended section 274(a) of the Act.

many reported decisions in which the meaning of the "for gain" requirement in section 241(a)(13) of the Act was at issue. In *Gallegos v. Hoy, supra,* at 666, the United States Court of Appeals for the Ninth Circuit held that the "for gain" requirement is met by a showing that an alien acted not for "love, charity, or kindness," but instead for "tangible substantial financial advantage." *See also Matter of Contreras,* 18 I&N Dec. 30 (BIA 1981). If an alien assists other aliens in entering the United States and is paid for the expenses that he incurred in the process, the "for gain" requirement is not met, since payment received must be "clearly in excess of the foreseeable expenses." *Ribeiro v. INS, supra,* at 181; *see also Soto-Hernandez v. INS, supra,* at 1073; *cf. Matter of Arthur,* 16 I&N Dec. 558 (BIA 1978). On the other hand, this Board has held that an alien's anticipation of profit, although no money is ever actually received, sufficiently establishes the "for gain" requirement in section 241(a)(13). *Matter of B-G-,* 8 I&N Dec. 182 (BIA 1958); *Matter of P-G-,* 7 I&N Dec. 514 (BIA 1957).

In the instant case, the Service relies on the testimony given by one of the respondent's co-conspirators during the criminal proceedings to support its argument that this respondent smuggled aliens "for gain."[2] The relevant portions of the co-conspirator's testimony concerning payment to the respondent for his participation in the conspiracy are set forth below:

Q. How much was [the respondent] going to get paid for this?
A. I told him I was going to pay his expenses.
Q. You told him you were going to give him expenses. How much expenses?
A. I told him whatever, you know, the amount. I was going to pay his gas, and if he lost any—
Q. Were you going to pay him for his time, all this time?
A. Yes.
Q. How much did you tell him you were going to pay him for his time?
A. I didn't tell him how much I was going to pay him.

The Service's argument on appeal is that the immigration judge erred in concluding that the respondent was only being paid for his expenses for his role in the conspiracy, since there was evidence submitted to the effect that the respondent was also being paid for his "time." The Service contends that the respondent's roundtrip from New York City to the Canadian border took 14 hours, that the respondent anticipated payment for this 14 hours, and that the

---

[2] For the purposes of this decision, we accept as true, as did the immigration judge, the testimony that has been transcribed from the respondent's criminal proceedings. Because of our disposition of the Service's appeal, we need not address the respondent's argument that the admission into the record of the testimony from the criminal proceedings is "fundamentally unfair" to the respondent since the "gain" requirement was not at issue in the criminal case.

anticipated payment constitutes "gain" within the meaning of section 241(a)(13).

We find the co-conspirator's reference to "time" in his testimony, however, to be ambiguous. The prosecutor in the criminal proceedings brought up the subject of payment for "time" immediately after the respondent's co-conspirator testified that he agreed to pay the respondent for expenses incurred. Although the respondent's co-conspirator did state that he had agreed to pay the respondent "for his time," the co-conspirator could have meant that paying the respondent for his "time" was one aspect of paying the respondent for expenses incurred. That is, the co-conspirator could have intended to reimburse the respondent for wages that he lost for "time" away from his job.

The Service contends, however, that the co-conspirator intended to pay the respondent an hourly wage for the respondent's participation in the conspiracy. There is no evidence in the record which indicates that the respondent and his co-conspirator contemplated an hourly wage for the respondent's role in the conspiracy. The co-conspirator's own testimony was that he did not tell the respondent how much he would be paid for his "time." The respondent, in his statement given to the Service on the day of his arrest, stated that the co-conspirator informed the respondent that he would be paid for "gas and other expenses." Thus, we find no clear evidence in the record that the respondent received "tangible substantial financial advantage" because of his participation in the conspiracy, or that the respondent actually anticipated "gain" for his role in the conspiracy.

The flaw in the Service's argument is that it requires that an inference be drawn in order for the "gain" element to be met. There is no direct evidence to indicate that the respondent received a fixed hourly wage or that he anticipated that he would receive anything beyond his expenses, so the Service suggests that we can infer "gain" from the co-conspirator's bald statement that he agreed to pay the respondent "for his time." An inference cannot be drawn to establish an alien's deportability, however, since inference-drawing falls short of the "clear, unequivocal, and convincing" evidence standard that governs deportation cases.[3] The only "clear, unequivocal, and convincing" evidence with regard to the amount that the respondent was to receive is the testimony and written

---

[3] The Service's argument before the immigration judge, that the respondent's co-conspirators profited from the conspiracy and therefore one may assume that the respondent profited as well, is similarly flawed and was properly rejected by the immigration judge.

statement which establish that the respondent's remuneration was to be limited to his expenses. As noted above, payment for expenses is insufficient to establish "gain" and to sustain a section 241(a)(13) charge. *Ribeiro v. INS, supra; Soto-Hernandez v. INS, supra.*

Finally, we find to be without merit the Service's argument that the respondent is deportable because he had agreed to provide accommodations for two nights in New York City to the government informant in the criminal proceedings. First, the informant did not identify the respondent by name as the person who was to provide him with accommodations. Second, even assuming that the respondent did provide the informant with accommodations in New York City, this does not establish that the respondent participated in the smuggling conspiracy "for gain"; the informant did not state that he paid a fee, or promised a fee, to the respondent for these accommodations. The testimony in the record regarding the hotel accommodations simply does not establish that the respondent derived or anticipated any profit from his role in the conspiracy. Accordingly, based on all of the foregoing, we concur with the immigration judge in his conclusion that the Service did not meet its burden of proof with respect to the section 241(a)(13) charge.

## BRINGING ALIENS INTO THE UNITED STATES AND TRANSPORTING ALIENS WITHIN THE UNITED STATES AS A "CRIME INVOLVING MORAL TURPITUDE"

The Service argues as an alternative ground for deportation that the respondent's conviction under section 274(a) constitutes a conviction for a "crime involving moral turpitude committed within five years after entry," and that the respondent is therefore deportable under section 241(a)(4) of the Act.[4] The immigration judge concluded, primarily as a matter of statutory construction, that a section 274(a) conviction does not involve moral turpitude.

The respondent argues on appeal that a conviction under section 274(a) of the Act cannot give rise to section 241(a)(4) deportability, because such a result would render section 241(a)(13), and its "gain" requirement, "mere surplusage." The immigration judge agreed with this rationale. He stated that Congress would have had no reason to add "smuggling aliens for gain" as a separate ground for deportation if Congress believed that alien smuggling was a

---

[4] Although the respondent was convicted of a conspiracy count in violation of 18 U.S.C. § 371 (1988), the sole issue here is whether a conviction under section 274(a) constitutes a conviction for a crime involving moral turpitude, since conspiracy is only a crime involving moral turpitude if the underlying offense involves moral turpitude. *See Matter of Bader,* 17 I&N Dec. 525 (BIA 1980).

crime involving moral turpitude. *Cf.* sections 241(a)(13) and 241(a)(4) of the Act. He went on to conclude that a section 274(a) conviction for alien smuggling is not a crime involving moral turpitude.

We agree with the conclusion of the immigration judge that a conviction under section 274(a) does not render an alien deportable under section 241(a)(4) of the Act. A fundamental rule of statutory construction is that "a specific provision prevails over a more general one. . . ." *Castaneda-Gonzalez v. INS*, 564 F.2d 417, 423 (D.C. Cir. 1977); *see also Thielebeule v. M/S Nordsee Pilot*, 452 F.2d 1230, 1232 (2d Cir. 1971). We find that the most sensible construction of the Act, consistent with the foregoing principle of statutory construction, is that the Service should be foreclosed from attempting to establish the respondent's deportability under the more general 241(a)(4) ground when it has failed to sustain a charge of deportability under the 241(a)(13) ground, which was enacted specifically to address the problem of alien smuggling.

The Service has not pointed to any legislative history or legislative intent to support its position that an alien who has been convicted of alien smuggling should be found deportable under section 241(a)(4) although the "gain" requirement of section 241(a)(13) has not been met. On the contrary, this Board stated in *Matter of I-M-*, 7 I&N Dec. 389 (BIA 1957), a case involving an alien who had been indicted under section 274(a)(2) for unlawfully transporting aliens within the United States, that "[i]t was the intention of Congress to make it a *criminal* offense, but not a deportable offense, to transport, conceal, *etc.*, under section 274 an alien illegally in the United States. . . ." *Id.* at 391. Considering that there is apparently no legislative history to support the Service's position regarding the respondent's deportability, we note that any lingering ambiguities regarding the construction of the Act are to be resolved in the alien's favor. *See INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948).

Moreover, the Service's decision in this case to proceed against the respondent pursuant to section 241(a)(4) raises an issue of fundamental fairness to the respondent. A review of the precedent cases in this area reveals that the Service traditionally has not charged aliens who have been convicted of alien smuggling with deportability under section 241(a)(4). *See, e.g., Matter of Estrada*, 17 I&N Dec. 187 (BIA 1979); *Matter of Vargas-Banuelos*, 13 I&N Dec. 810 (BIA 1971); *Matter of J-T-*, 6 I&N Dec. 823 (BIA 1955). The Service policy of charging aliens in these circumstances with deportability under 241(a)(13), but not under 241(a)(4), has had significant consequences for those aliens for whom a judicial recommen-

dation against deportation has been entered pursuant to section 241(b) of the Act. The judicial recommendation against deportation has no effect upon an alien who is found deportable under section 241(a)(13). *See Jew Ten* v. *INS, supra,* at 835; *Matter of Corral-Fragoso,* 11 I&N Dec. 529 (BIA 1966); *Matter of J-T-, supra.* The judicial recommendation precludes the Service, however, from deporting an alien pursuant to section 241(a)(4). In the instant case, the respondent's counsel in his criminal proceedings would have had no reason to request a judicial recommendation against deportation within 30 days of the respondent's conviction and sentence, since the recommendation would have been futile against a subsequent 241(a)(13) charge, and counsel would not reasonably have anticipated, considering precedent cases, a 241(a)(4) charge.

In support of its argument that the respondent should be deported because he has been convicted of a "crime involving moral turpitude," the Service relies primarily on a United States District Court decision, *United States* v. *Raghunandan,* 587 F. Supp. 423 (W.D.N.Y. 1984). We find that the *Raghunandan* decision is not controlling in this case. As the respondent states in his brief, *Raghunandan* is not precedent for the proposition that an alien who has been convicted of alien smuggling is deportable under section 241(a)(4). In *Raghunandan,* the court ruled that alien smuggling was a crime involving moral turpitude so that it could reach the issue of whether to enter a judicial recommendation against deportation for the defendant, since that relief would only be available to the defendant if he were charged with section 241(a)(4) deportability in his pending deportation proceedings.[5] Thus, the question of whether a section 274(a) conviction is a crime involving moral turpitude was only a threshold issue in *Raghunandan,* and the court's conclusion with regard to that issue was mere dictum.

We further find, applying the traditional "moral turpitude" analysis, that the respondent's section 274(a) conviction does not render him deportable under section 241(a)(4) of the Act. The respondent was convicted, not of a common law crime, but of the regulatory offense of unlawfully bringing aliens into the country and transporting aliens within the United States. Violations of the immigration laws, in the absence of "fraud or evil intent," are not ordinarily regarded as involving moral turpitude. *See* 2 C. Gordon & S.

---

[5] In *United States* v. *Raghunandan, supra,* the Government actually took the position that the defendant's conviction for alien smuggling did not involve moral turpitude. Moreover, while the *Raghunandan* court did surmise that the respondent could be charged with section 241(a)(4) deportability, our research has not revealed any reported decisions in which aliens in the circumstances of this respondent were charged with the 241(a)(4) ground of deportability.

Mailman, *Immigration Law and Procedure* § 4.14e, at 4-143 to -144 (rev. ed. 1989); *Matter of Lethbridge*, 11 I&N Dec. 444 (BIA 1965).

A further review of the precedent cases involving alien smuggling reveals that some persons convicted under section 274(a) for bringing aliens into the United States, or for transporting them within the country, have been motivated by "love, charity, or kindness," or by religious principles. *See United States v. Merkt*, 794 F.2d 950 (5th Cir. 1986); *Gallegos v. Hoy, supra; United States v. Elder*, 601 F. Supp. 1574 (S.D. Tex. 1985). Accordingly, we find it difficult to conclude that the entire class of persons who are convicted under section 274(a) have acted with an "evil intent." Aliens who have been convicted of smuggling other aliens, and who have done so "for gain," would arguably fall within the section 241(a)(4) ground of deportability, but such aliens would be per se deportable under section 241(a)(13), provided that their conviction occurred within 5 years of entry.

In addition, the Service has not cited any case in the brief in support of its appeal to establish that fraud is an essential ingredient of a section 274(a) conviction. Nor have we discovered such a case. Section 274(a) of the Act, furthermore, was amended by the Immigration Reform and Control Act of 1986. *See* the Immigration Reform and Control Act of 1986, § 112, Pub. L. No. 99-603, 100 Stat. 3359, 3381-83. The legislative history accompanying the amendment clarifies that section 274(a) was amended to broaden the proscription against smuggling and related offenses. *See* H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 65-66, *reprinted in* 1986 U.S. Code Cong. & Ad. News 5649, 5669-70. The legislative history also explains that persons may now be convicted under section 274(a) irrespective of whether they possessed a specific intent to assist aliens in unlawfully entering the United States. *See id.* Section 274(a) as amended now resembles a strict liability offense more than it does an intent-oriented criminal law. Accordingly, because one can now be convicted under section 274(a) without "fraud" or "evil intent" being inherent in the conviction, a section 274(a) conviction does not appear to constitute a crime involving moral turpitude.

Based on the foregoing discussion, we conclude that the respondent's conviction under sections 274(a)(1) and (2) of the Act is insufficient to support a charge of deportability pursuant to section 241(a)(4) of the Act. Because we also have concluded that the Service did not meet its burden of proof with respect to its section 241(a)(13) charge of deportability, the Service's appeal from the decision of the immigration judge terminating the respondent's deportation proceedings will be dismissed.

**ORDER:** The appeal is dismissed.